WESTERN FRUIT & PRODUCE COMPANY, Appellant, v. J. J. BUZZARD et al., Appellees.

PLEADING: Issues, Proof, and Variance—Variation in Shipping Point.
1 An allegation that a shipment was made F. O. B. at a *named* place is sufficiently met by proof that the shipment was made at a place

substantially the same as the place alleged, the goods and the freight charges being the same in either case. Especially is this true when the contract did not call for shipment at any particular place.

PLEADING: Issues, Proof, and Variance—Burden of Proof. He who claims that he has been misled by a variance between allegation and proof must show specifically *wherein* he has been misled.

NEW TRIAL: Discretion of Court—Granting on Untenable Grounds. An order for new trial on wholly untenable grounds will be reversed.

Headnote 1:   35 Cyc. p. 588.   Headnote 2:   4 C. J. p. 912 (Anno.) Headnote 3:   4 C. J. p. 832.

*Appeal from Scott District Court.*—A. P. BARKER, Judge.

MARCH 17, 1925.

ACTION to recover for breach of contract, tried with a jury. The verdict was in favor of plaintiff. From ruling on motion granting new trial, plaintiff appeals.—*Reversed and remanded.*

*A. G. Bush,* for appellant.

*J. A. Hanley* and *Maines & Kelly,* for appellees.

ARTHUR, J.—I.   The petition alleged that, on November 4, 1920, plaintiff sold, through the Boyer-Sicard Company, a brokerage company of Minneapolis, Minnesota, to defendant, one carload of apples, at the agreed price of $1,587.60, to be delivered on the car at Yakima, Washington; that the said car of apples was delivered to the railroad company in accordance with the terms of said sale; that defendant breached said contract by refusing to accept and pay for said shipment on its arrival at Davenport, Iowa; and that plaintiff has sustained damages on account of the breach of said contract in the sum of $687.37.   The answer was a general denial.

At the close of plaintiff's testimony, defendant moved for a directed verdict, and renewed said motion after verdict was returned.   The motions were overruled.

To sustain the case and entitle recovery, the instructions required plaintiff to establish by a preponderance of the evi-

dence: (1) that it sold the apples to defendant under the terms and conditions as claimed; (2) that, in accordance with the contract of sale, it delivered to the railway company ''at Yakima, Washington, or in that vicinity,'' the apples sold to defendant; (3) that defendant failed and refused to accept said shipment; and (4) the amount of damages sustained.

It is without dispute that plaintiff shipped a carload of apples to defendant, and that defendant refused to accept and pay for the same. On refusal of defendant to accept the shipment, plaintiff ordered the car forwarded by the railway company to S. A. Gerrard & Company at Cincinnati, Ohio, and there sold. The apples were sold by Gerrard & Company, and, after deducting the freight and expenses incident to sale, the balance of $885.06 was remitted to plaintiff. Plaintiff's loss was $687.37, and this is the amount demanded in the petition, and the amount of the verdict in favor of plaintiff. Defendant filed motion for a new trial, which was sustained, and a new trial granted; from which ruling this appeal is taken. In ruling on the motion for a new trial, the trial court, in a written opinion, said:

''The court is satisfied that it fell into error in overruling the motion for a directed verdict, and in giving Instruction No. 3. The contract in this case provided for delivery of the apples to the railway company at Yakima, Washington. Until the court came to examine the pleadings and the depositions, it was of the opinion that there was evidence in the case that Yakima and Gleed were at substantially the same places, and that, so far as freight charges and promptness of delivery at Davenport were concerned, they were the same. I do not now find anything of that kind in the record; and, the plaintiff having alleged in its petition that it complied with its contract and delivered the apples on board the cars at Yakima, it would seem that that was an element of its case that had to be proven. If loading the cars at Gleed and shipping them from that point was tantamount to shipping them from Yakima, that fact should be pleaded and proven.''

II. Errors relied upon for reversal are: (1) in failing to disregard the slight variance between the pleadings and the proof; (2) in granting a new trial on the ground of variance, because there was no proof that appellee had in any way been

misled thereby; (3) in sustaining motion for new trial uncon-
ditionally, and in failing to afford appellant an opportunity
to plead and prove, after the verdict, that Gleed was merely a
suburb of Yakima, or so close to it that shipment from one
point was equivalent to shipment from the other; (4) in hold-
ing that appellant was required to plead and prove that ship-
ment from Gleed was tantamount to shipment from Yakima;
(5) in holding that Instruction No. 3, submitting matters to be
established to entitle recovery, was erroneous.

III.    The petition alleged that the apples in question were
delivered on board the car at Yakima.    The evidence showed
that they were loaded and shipped at Gleed.    A new trial was
granted by the trial court upon the express
ground that the petition alleged delivery at
Yakima, while the evidence showed shipment
from Gleed.    It was upon this variance in the
pleading and proof that a new trial was granted.    In other
words, it was held by the trial court that the petition was de-
fective because it submitted an allegation that shipment from
Gleed was equivalent to shipment from Yakima.    The contract
declared on consisted of certain telegrams and confirmation of
telegrams.    The portion of the first telegram bearing upon the
shipment in controversy, sent to appellant by appellee's broker,
Boyer-Sicard Company, was as follows:

"Confirm Tri-City Davenport one car extras prompt ship-
ment two ten all ten per cent five tier labeled."

Appellant's answer to this telegram was:

"Willing to confirm Tri-City one car extras Yakima accept-
ance state certificate."

In reply and confirmation, Boyer-Sicard wired appellant:

"Satisfactory confirm Tri-City per your wire yesterday."

These telegrams were followed by written confirmations,
which amplified the telegrams and showed that the apples were
to be loaded by appellant "F. O. B. shipping point."    It con-
clusively appears, we think, that it was the understanding of
appellee, as well as of appellant, that the shipment was to be
made "F. O. B. shipping point."    That appellee so understood
is manifest from a letter written by Buzzard to his broker, in
which he said:

1. PLEADING: is-
sues, proof, and
variance: varia-
tion in shipping
point.

"Now regarding three cars of extra fine Winesaps, labeled stock, not to exceed 10 per cent, five tiers at $2.10 per box F. O. B. shipping point."

The car in controversy was one of the three cars mentioned in the above quotation from Buzzard's letter. It appears from the above mentioned telegrams and Buzzard's letter that the contract for purchase of the apples was understood by the parties to mean that the apples were to be loaded "F. O. B. shipping point," and that no named shipping point was specified in the contract. The contract did not require the apples to be shipped F. O. B. Yakima. The petition did not allege that the contract required the apples to be shipped from Yakima. The petition merely set out the telegrams constituting the contract, and alleged that:

"In compliance with said contract, plaintiff shipped D. L. & W. car No. 6241 of extra fancy winesaps from Yakima, Washington, to said Tri-City Fruit Company at Davenport, Iowa."

Reading the telegrams and letters making up the contract, we doubt if it was necessary that the petition state that shipment was made from any particular point in the Yakima valley. Each box of apples bore a label reading "Western Brand Yakima Valley Fruit." It was known that the apples came from the Yakima valley. These fruit dealers, of course, were familiar with the generally well-known fact that the Yakima valley is celebrated as an apple country, and that Yakima apples are well-known, and that the term contained in the above mentioned label applied to apples produced in the Yakima valley, and would not be limited to apples shipped from the city of Yakima.

Counsel for appellant, in argument, state that Gleed is five and one-half miles distant from Yakima, and have exhibited in the abstract a map to verify such statement, which statement is not challenged. Of course, this statement by counsel and the map, which was not introduced in evidence, furnish no proof of the distance between Yakima and Gleed. There is no direct evidence in the record showing the distance from Gleed to Yakima; but we think fair inference may be drawn from the record that Gleed and Yakima are towns located in the well-known Yakima valley, and in such close proximity that the

freight rate would presumptively be the same, or approximately the same, from each place to Davenport. The manifest of the shipment in question discloses that the town of Gleed, where the apples were loaded, is on a rural mail route designated as "R. F. D. No. 6, Yakima, Washington." It also appears that Gleed is a strictly local point on the Northern Pacific Railroad, the road on which Yakima is located and the road over which the apples were shipped. The record also shows that the railroad agent at Yakima made the order for spotting the car in question for loading at a cold-storage plant in Gleed. After loading, inspection was made at Gleed; and the certificate of inspection shows that it was sworn to at Yakima on the same day it was made. We think the court did not err in requiring the jury to find, as one of the elements of appellant's case, as he did in Instruction No. 3, that the apples were delivered to the railway company at Yakima "or in that vicinity." We think the court would have been justified in taking judicial notice of the location of Gleed and Yakima, and that they are but a short distance apart. Whether by the process of judicial notice or by some other means, the trial court in his own mind seems to have located Gleed in the vicinity of Yakima, as is manifested from the language used in Instruction No. 3. As above adverted to, we think the fair inference from the whole record is that Gleed and Yakima are not only in the same vicinity, but are but a short distance apart, and that the evidence was sufficient to justify the jury in finding that a shipment from Gleed was substantially the equivalent of a shipment from Yakima. No claim was made in the court below, and no claim is made on this appeal, of prejudice on account of the shipment's having been made from Gleed instead of Yakima. There could have been no injury to appellee from shipment from Gleed instead of Yakima, unless a higher freight rate prevailed from Gleed to Davenport than from Yakima to Davenport; and the record does not disclose that there was any difference. If any difference, it must have been negligible. The evidence does show that the freight rate was the same to Cincinnati as to Davenport; for there was no additional cost in freight for forwarding the shipment to Cincinnati for sale by the commission house. The undisputed evidence is: "The car was diverted on the original

road, and no additional freight was charged.'' Appellee did not show, nor attempt to show, any prejudice or injury on account of the shipment's being made from Gleed instead of Yakima. Indeed, appellee's insistence upon fatal variance between the pleading and proof was quite long delayed. The motion to direct verdict in appellee's favor at the close of plaintiff's testimony, and the renewal of the motion after verdict was returned, do not mention the claimed variance, afterwards vaguely stated in the motion for a new trial. We think that the variance between the pleading and the proof was immaterial, and should have been disregarded. Section 3601, Code of 1897, reads:

*2. PLEADING: issues, proof, and variance: burden of proof.*

''The court, in every stage of an action, must disregard any error or defect in the proceeding which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.''

A statute substantially the same as the above quoted statute was in the Revision of 1860, Section 2978, and also in the Code of 1873, Section 2690, and was construed in *Doniphan & Hughes v. Street,* 17 Iowa 317; *Kibby v. Harsh,* 61 Iowa 197. In the *Kibby* case, there was variance of an allegation of the petition and the proof in support of said allegation. Concerning such variance we said:

''We think, in view of the fact that no rights of the defendants are affected by the failure to make such proof, it is a most opportune occasion to apply the provisions of the statute.''

Section 3597, Code of 1897, provides:

''No variance between the allegations in a pleading and the proof is to be regarded as material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be shown by proof to the satisfaction of the court, and such proof must also show in what respect he has been so misled, and thereupon the court may order the pleading to be amended upon such terms as may be just.''

Under this statute, the burden was upon appellee to show that it was misled or prejudiced by the claimed variance. As before stated, appellee did not plead or attempt to show any

prejudice or injury, or that it was misled in any way on account of the allegations in the petition that the shipment was made from Yakima, and that the proof showed that the shipment was made from Gleed. This statute has been before us for construction in several cases. *Wenks v. Hazard,* 149 Iowa 16; *Barger v. Brown,* 161 Iowa 656; *Mudge v. Railway Mail Equip. Co.,* 167 Iowa 656; *Gray v. Sanborn,* 178 Iowa 456.

We do not overlook the well settled rule that the ruling of the trial court on motion for a new trial, and especially where the ruling grants a new trial, will not be interfered with unless it clearly appears that there has been an abuse of discretion, and that the ruling is clearly erroneous. We have discussed only the proposition involved in this appeal: that is, the variance between the pleading and the proof regarding the place from which the shipment in question was made. Of course, if the motion for a new trial should have been sustained on any of the grounds stated, it was not error to grant a new trial. We have carefully examined the record and considered all the grounds urged by appellee in support of the ruling setting aside the verdict and granting a new trial, and conclude that they are without merit. There was substantial compliance with the contract by appellant in all particulars. The instructions submitting the case to the jury were fair, clear, and free from error.

3. NEW TRIAL: discretion of court: granting on untenable grounds.

We are constrained to hold that a new trial in this case should not have been granted; that the verdict should have been permitted to stand, and judgment entered thereon. The case is reversed and remanded, and the district court is directed to enter an order reinstating the verdict, and to render judgment thereon in favor of plaintiff, appellant.—*Reversed and remanded.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.